United States District Court
Southern District of Texas
**ENTERED**
August 08, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| RODNEY MESQUIAS, | § | |
| Movant, | § | |
| | § | |
| v. | § | **Civil Action No. 1:23-cv-125** |
| | § | (Criminal Case No. 1: 18-cr-008-1) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Rodney Mesquias's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence by a Person in Federal Custody," "Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," and "Citation of Additional Relevant Authority" (collectively, Mesquias's "Motion"), the United States' "Response to Defendant's 28 U.S.C. § 2255 Motion" (the Government's "Response"), and Mesquias's "Reply to United States' Response to Defendant's 28 U.S.C. § 2255 Motion" (Mesquias's "Reply"). Dkt. Nos. 1, 2, 23, 24, 37, 51. For the reasons provided below, it is recommended that the Court: (1) **DENY** the claims presented in Mesquias's Motion; (2) **DIRECT** the Clerk of Court to close this case; and (3) **DECLINE** to issue a certificate of appealability.


## I.    Jurisdiction

The Court has federal question subject matter jurisdiction over the claims and the parties pursuant to 28 U.S.C. § 1331 and § 2255. Dkt. No. 1; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## II.    <u>Background and Factual Summary</u>[1]

A grand jury returned a twelve-count superseding indictment against Mesquias charging him with the following offenses: (1) conspiracy to commit health care fraud; (2) health care fraud (six counts); (3) conspiracy to commit money laundering; (4) obstruction of health care investigations; (5) false statement; (6) conspiracy to obstruct justice; and (7) conspiracy to pay and receive kickbacks. *See United States v. Mesquias, et al,* 1:18-cr-008-1, Dkt. No. 126.[2] Mesquias entered a plea of not guilty to all charged offenses. CR Dkt. Min. Entry Oct. 25, 2018. Jury selection was scheduled for January 28, 2019. CR Dkt. No. 132. About a month before jury selection, Mesquias's attorney, Charles Banker, moved to continue the scheduled jury trial. CR Dkt. No. 151. The Court granted the continuance and originally reset the jury selection date to March 18, 2019, May 20, 2019, and again to August 5, 2019. CR Dkt. Nos. 155, 170, 212. Shortly before the August 5, 2019, jury selection date, Attorneys Hector and Tony Canales filed a notice of appearance as co-counsel for Mesquias.  CR Dkt. No. 235. A jury trial followed, beginning on October 22, 2019, and ending on November 6, 2019. CR Dkt. Min. Entry Oct. 22, 2019 — Nov. 6, 2019.

The superseding indictment contained allegations that, for almost a decade, Mesquias owned and operated a network of home health and hospice centers across Texas. CR Dkt. No. 126 at 1-2. Mesquias, along with others, engaged in a scheme to falsely certify that patients were eligible for home health or hospice services. *Id.* During the trial, the Government presented evidence to establish that Mesquias committed health care

---

[1] The factual information was obtained from the related criminal case, 1:18-cr-008-1, Mesquias's Motion and Reply, and the evidentiary hearing held in this case. CR Cause No. 1:18-cr-008-1; Dkt. Nos. 1, 2, 23, 24, 51, 82, 85; Dkt. Min. Entry April 16, 2024; Dkt. Min. Entry April 30, 2024.

[2] Hereinafter, Mesquias's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their criminal docket number.

fraud by abusing Medicare's reimburse-first-verify-later system. CR Dkt No. 358 at 231. The Government also offered evidence that Mesquias was the driving force behind false certifications and doctored medical records. CR Dkt. No. 357 at 161, 200-01, 216, 219, 234-42.

On November 6, 2019, the jury returned a guilty verdict on all twelve counts. CR Dkt. No. 369. The Court set a sentencing hearing for December 16, 2020. CR Dkt. 472. After the sentencing hearing, U.S. District Judge Ronaldo Olvera sentenced Mesquias to 240 months' imprisonment. CR Dkt. Minute Entry dated December 16, 2020. A Judgment was entered on December 30, 2019. CR Dkt. No. 519. Mesquias, through counsel, timely filed a notice of appeal to the Fifth Circuit Court of Appeals. CR Dkt. No 515. His conviction and sentence were affirmed. CR Dkt. 608; *See United States v. Mesquias*, 29 F.4th 276, 283 (5th Cir. 2022). During the course of the criminal case, attorney Ruben Pena represented Mesquias for approximately 40 days. Dkt. No. 82 at 35-42. Attorneys Charles Banker, Tony Canales, and Hector Canales represented Mesquias at trial. Dkt. Nos. 82, 85. Tony Canales and Hector Canales also represented Mesquias at sentencing and on appeal. CR Dkt. Nos. 484, 515, 541; CR Dkt. Min. Entry Dec. 16, 2020.[3]

On August 29, 2023, Mesquias timely filed his Motion. Dkt. Nos. 1, 2, 23, 24. Liberally construed, Mesquias alleges that his counsel were ineffective by: (1) failing to inform him of the consequences of proceeding to trial; (2) failing to conduct an adequate pretrial investigation; (3) failing to negotiate a favorable plea agreement; (4)  failing to investigate and call witnesses; (5) failing to properly cross-examine witnesses; (6) failing

---

[3] Mesquias's ineffective assistance claims at sentencing and on appeal are directed towards Banker, Tony Canales, and Hector Canales. Dkt. No. 2 at 44-46. However, the record evidence shows Banker did not represent Mesquias at sentencing or on appeal. CR Dkt. Nos. 484, 515; CR Dkt. Min. Entry Dec. 16, 2020; *United States v. Mesquias*, No. 20-40869 (5th Cir. Dec. 23, 2020), ECF Nos. 12, 14, 146.

to argue that the Government did not prove the intent necessary to commit a health care fraud offense; (7) failing to object before and during the sentencing hearing; and (8) failing to raise stronger issues on appeal. *Id.*

The Court ordered attorneys Ruben Pena, Charles Banker, Tony Canales, and Hector Canales to each file an affidavit in response to Mesquias's ineffective assistance of counsel claims. Dkt. No. 6. Hector and Tony Canales filed a joint affidavit to which Mesquias filed a reply.[4] Dkt. Nos. 16, 22. On January 19, 2024, the Government filed its Response. Dkt. No. 37. After reviewing the relevant pleadings and records, the Court set the case for an evidentiary hearing on the limited issue regarding Mesquias's claims of ineffective assistance of counsel during plea negotiations; Gregory Sherwood was appointed to represent Mesquias at the hearing. Dkt. No. 38. Prior to the evidentiary hearing, Mesquias, through his court-appointed attorney, filed his Reply. Dkt. No. 51.

On April 16, 2024, the Court held an evidentiary hearing. *See* Min. Entry April 16, 2024. Attorneys Ruben Pena, Tony Canales, and Hector Canales testified at the hearing. *Id.* Following their testimony, the Court continued the evidentiary hearing because Attorney Charles Banker failed to appear. *Id.*; Dkt. No. 70. On April 30, 2024, the Court resumed the evidentiary hearing; attorney Charles Banker and Mesquias testified. *See* Min. Entry April 30, 2024. This matter is now ripe for consideration.

---

[4] The record contains previously executed sworn affidavits from Attorneys Charles Banker, Hector Canales, and Ruben Pena, which Mesquias filed as exhibits to his Memorandum of Law in support of his Motion. Dkt. Nos. 2-1, 2-2, & 2-3.

### III.   <u>Legal Standard</u>

**A. 28 U.S.C. § 2255**

Postconviction relief under 28 U.S.C. § 2255 is limited to errors of constitutional dimension that could not have been raised on direct appeal and that, if left unaddressed, would result in a complete miscarriage of justice. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *see also United States v. Rodriguez-Castro*, 814 F. App'x 835, 837-38 (5th Cir. 2020) (per curiam). Given these limitations, a federal defendant may move to vacate, set aside, or correct his sentence under § 2255 only if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeds the statutory maximum; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

**B. Ineffective Assistance of Counsel**

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against him. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include trial and pretrial proceedings—including the plea-bargaining process. *Laffler v. Cooper*, 566 U.S. 156, 168 (2012). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Id.* at 164–65.

Whether a criminal defendant has been denied effective assistance of counsel is governed by *Strickland v. Washington's* two-part inquiry:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). To demonstrate that an attorney's performance was constitutionally deficient, a defendant bears the burden to prove that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687–88. In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.*

## IV.   <u>Discussion</u>

As stated above, Mesquias generally raises eight claims of ineffective assistance of counsel. Dkt. Nos. 1, 2, 23, & 24. In its Response, the Government argues Mesquias has not met his burden by showing that his counsel performed deficiently, or that Mesquias suffered prejudice as a result. Dkt. No. 37 at 12-22. The Court will discuss each claim in turn.

**A. Counsel failed to inform Mesquias of the consequences of proceeding to trial.**

In his first claim, Mesquias alleges his trial counsel were ineffective for failing to advise him of the consequences of pleading guilty versus proceeding to trial. Dkt. No. 2 at 18, 27. Mesquias further claims trial counsel failed to inform him about his trial strategy. *Id.* at 36, 38. Because of his trial counsel's failures, Mesquias asserts that he believed "proceeding to trial was the only way to move forward." Id. at 34-35. Mesquias's conclusory allegations are insufficient to overcome the presumption that his trial counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687-91. Mesquias, then, fails to demonstrate how his trial counsel's conduct was deficient. Accordingly, this claim lacks merit and should be dismissed.

**B. Trial counsel failed to conduct an adequate pretrial investigation.**

In his second claim, Mesquias alleges that trial counsel failed to "conduct any kind of reasonable independent pretrial investigation of his case." Dkt. No. 2 at 28. Mesquias also asserts that trial counsel failed to file pretrial motions. *Id.* at 38. Mesquias further argues that the jury would have reached a different verdict had Mesquias's counsel "investigated and corroborated the discovery that the government possessed." *Id.* at 37-38.

Mesquias's claims are belied by the record, which includes various discovery motions filed on his behalf. These include *Brady* motions, *Giglio* motions, *Jencks* motions, motions to exclude testimony and evidence, and motions in limine to limit

testimony in preparation for trial. CR Dkt. Nos. 101, 102, 105, 106, 197, 207, 259, 266, 278, 282, 338, 349, 350. Said another way, the record evidence shows trial counsel did conduct the pretrial investigation and did file the discovery motions Mesquias alleges they did not. Critically, Mesquias also fails to identify what other evidence or discovery motions, if any, his trial counsel should have investigated or filed. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (A defendant who alleges failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.). Accordingly, this claim lacks merit and should be dismissed.

### C. Counsel failed to negotiate a favorable plea agreement.

In his third claim, Mesquias asserts that trial counsel did not pursue a plea agreement from the Government. Dkt. No. 2 at 34; Dkt. No. 85 at 17. Mesquias further asserts that "there was at no time any discussion of a plea bargain by anybody or [he] would have considered it." *Id.*

At the evidentiary hearing, trial counsel testified regarding the representation they provided to Mesquias regarding any Government plea offers. Trial counsel generally stated that the Government never extended a plea offer. Dkt. Nos. 82, 85. Tony Canales testified "[t]he Government never extended a formal plea offer." Dkt. No. 82 at 21. Hector Canales also testified, "[t]here were no offers made by the Government." *Id.* at 28. Pena testified he was unaware of a plea offer extended by the Government. *Id.* at 41. Banker also testified the Government never made a plea offer to Mesquias. Dkt. No. 85 at 10.

Trial counsel's testimony also mentioned that the Government did not approach Mesquias about being a cooperating witness in the criminal case. Dkt. Nos. 82, 85. Tony

Canales testified the Government did not express any interest in having Mesquias testify as a cooperating witness. Dkt. No. 82 at 21. Hector Canales also testified to the Government's lack of interest in Mesquias testifying as a cooperating witness. *Id.* at 32. Pena further testified he "was never in any conversations with the Government," on whether the Government was looking to reach a plea deal with Mesquias. *Id.* at 41. Banker also testified the Government had not expressed an interest in Mesquias testifying as a cooperating witness. Dkt. No. 85 at 10.

During their testimony, trial counsel also explained that Mesquias never indicated a desire to plead guilty. Dkt. Nos. 82, 85. Tony Canales testified that Mesquias insisted upon his innocence and never indicated a willingness to plead guilty. Dkt. 82 at 20. Hector Canales testified "Mr. Mesquias made it clear he did not want to plea, that he was innocent, and that he wanted to try his case." *Id.* at 28. Pena also testified Mesquias believed himself to be innocent. *Id.* at 42. Banker further testified that Mesquias believed he was innocent. Dkt. No. 85 at 10.

If Mesquias claims that he wanted to plead guilty on his own accord, the record evidence indicates Mesquias was aware of that option based on discussions with his trial counsel regarding the possibilities and dangers of going to trial, and the applicable sentencing guidelines. Dkt. No. 82 at 10, 19, 31; Dkt. No. 85 at 9. In the days leading up to trial, Tony Canales testified that he had "daily conversations [with Mesquias] about everything, about the trial, about the parties, and the pros and cons, and he felt very confident that he – that we were going to be successful with some of the witnesses we knew about, that we talked to." *Id.* at 15. Hector Canales also explained that he had multiple discussions with Mesquias about the potential sentencing exposure he would

face if he chose to go to trial. *Id.* at 31. Banker testified that he discussed sentencing exposure with Mesquias as well. Dkt. No. 85 at 9.

The record indicates Mesquias was also aware of the option to plead guilty because Jose Garza, a co-defendant in the criminal case, pled guilty shortly before trial. Dkt. No. 82 at 25, 33. Garza worked closely with Hector Canales, Tony Canales, and Mesquias, as a key part of Mesquias's defense. *Id.* at 15, 26. Tony Canales testified that, given their continued work on trial preparation and defense strategy, Garza's guilty plea "came as a complete shock." *Id.* at 15. Hector Canales further testified that Garza's guilty plea "was a complete surprise" because "Garza had been a part of the defense the entire time, and we walk in to pick the jury, I remember, and he's up at the bench, you know, pleading guilty. But we had no idea that was coming." *Id.* at 25-26. Banker also testified that co-defendant Jose Garza pled guilty shortly before the trial setting. Dkt. No. 85 at 11. As Hector Canales confirmed in his testimony, it was possible for Mesquias to enter a guilty plea at any time, regardless of whether the Government had made a plea offer. Dkt. No. 82 at 26.

Mesquias has not provided any factual support or other evidence to support his otherwise conclusory allegations. Mesquias, therefore, has not met his burden to show he was prejudiced by counsel's alleged conduct. Accordingly, this claim does not warrant relief and should be dismissed. *United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue").

**D. Counsel failed to investigate and call witnesses.**

In his fourth claim, Mesquias alleges that trial counsel provided ineffective assistance by failing to investigate and call witnesses. Dkt. No. 2 at 28-29, 31, 36, 39. Mesquias argues that counsel never took any steps to hire an expert witness to prove the actual amount of loss. *Id.* Mesquias further argues counsel never met with or called any of the prescribing physicians or patients from the list Mesquias provided. *Id.* at 36. Specifically, Mesquias cites Dr. Gonzaba and Dr. Pelly as potential witnesses trial counsel should have interviewed and called. *Id.*

To show ineffective assistance, a movant must name the specific witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (citing *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)). Here, Mesquias fails to meet his burden. Mesquias has not provided any additional detail in support of his claim regarding the expert witnesses or the unnamed witnesses. Dkt. No. 2 at 28-29, 31, 36, 39. As for the potential witnesses named above, Mesquias fails to state whether they were available to testify, the nature of their testimony, or how their testimony would have been favorable to his defense. Mesquias, therefore, has not met his burden to show that testimony from additional witness testimony would have been beneficial, or that his trial counsel's failure to call them constitutes ineffective assistance. Accordingly, this claim lacks merit and should be dismissed.

### E. Counsel failed to challenge the Government's case-in-chief, make objections, and cross-examine witnesses during trial.

In his fifth claim, Mesquias also alleges that trial counsel failed to challenge the Government's case-in-chief, make objections regarding the kickback allegations, and cross-examine witnesses. Dkt. No. 2 at 36-38. However, his claim is belied by the record. The record shows trial counsel cross-examined the Government's witnesses and made appropriate objections when necessary. CR Dkt. No. 355 at 114, 297; CR Dkt. No. 356 at 3, 106, 135, 289; CR Dkt. No. 357 at 64, 164, 242; CR Dkt. No. 358 at 199, 236, 289; CR Dkt. No. 359 at 203; CR Dkt. No. 360 at 107; CR Dkt. No. 361 at 107, 264, 281, 294; CR Dkt. No. 363 at 84, 172, 206, 281; CR Dkt. No. 364 at 26, 68. Those objections included kickbacks allegations specifically, and the Government's case-in-chief in general. *Id.* Again, the record shows trial counsel did specifically what Mesquias now alleges they did not. If Mesquias is claiming additional evidence trial counsel failed to present to refute the Government's witnesses, he has not identified it here. His allegations, then, are conclusory and his claim should be denied. *See Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

### F. Trial counsel failed to argue that the Government did not prove the intent necessary to commit a health care fraud offense.

In his sixth claim, Mesquias contends his trial counsel should have argued that the Government failed to prove that Mesquias had the requisite intent to commit health care fraud as charged. Dkt. No. 2 at 43; Dkt. No. 51 at 3-5. Mesquias relies on the Supreme Court's decision in *Ruan v. United States* to support his argument. Dkt. No. 2 at 40.

Mesquias's reliance on *Ruan* is mistaken. In *Ruan*, the Supreme Court discussed the mens rea element the Government must prove when a doctor is charged with 21 U.S.C. § 841(a) and 21 C.F.R. § 1306.04(a).[5] *Ruan v. United States*, 597 U.S. 450, 454 (2022). However, Mesquias was not charged with, or convicted, of violating 21 U.S.C. § 841 and 21 C.F.R. § 1306.04(a). CR Dkt. No. 119, 126. Mesquias was convicted of violating 18 U.S.C. §§ 2, 1349, 1347, 1956(h), 1518, 1001(a)(2), 1512(k), and 371. *Id.*

Even assuming arguendo that Mesquias's reliance on *Ruan* is correct, the evidence presented at trial belies Mesquias's claim regarding men rea. The evidence showed Mesquias was the driving force behind the false certifications and doctored medical records. CR Dkt. No. 357 at 210; CR Dkt. No. 358 at 73, 240-41; CR Dkt. No. 359 at 19-27. He established the rule of admitting every patient and not discharging them. *Id.*; CR Dkt. No. 363 at 60-61, 79-80. He ordered that medical directors spend multiple days creating "boxes" of falsified medical records. *Id.* The Government presented evidence to the jury showing that Mesquias was intimately involved with the fraudulent scheme. *Id.* Mesquias, then, fails to show how his trial counsel was deficient or how he was prejudiced by trial counsel's alleged failure to rely on *Ruan* regarding his mens rea related claim. Mesquias's claim, therefore, lacks merit and should be denied.

---

[5] The Court in *Ruan* specified that they were only considering the question of state of mind that the Government must prove to convict doctors under 21 U.S.C. § 841 and 21 C.F.R. § 1306.04(a). *Ruan*, 597 U.S. at 454.

**G. Sentencing Counsel failed to make objections to the presentence investigation report ("PSR") before and during the sentencing hearing.**

In his seventh claim, Mesquias alleges sentencing counsel failed to file objections to the PSR and during the sentencing hearing. Dkt. No. 2 at 40. Mesquias asserts sentencing counsel should have filed objections to the PSR and argued for a reduced sentence during the sentencing hearing. *Id.* at 45. Again, Mesquias's claims are belied by the record. In addition to raising objections filed in a detailed sentencing memorandum, sentencing counsel argued at the sentencing hearing against 30 of the 48 points assessed in the PSR's calculation of Mesquias's total offense level. CR Dkt. Nos. 484, 509, 510; CR Dkt. No. 617 at 5. Sentencing counsel also argued for the Court to grant a substantial downward variance from the term of life imprisonment. CR Dkt. No. 617 at 46-52. The Court reduced the offense level for the loss amount by two levels and imposed a term of 240 months' imprisonment instead of life. *Id.* at 9-14, 26; CR Dkt. No. 519. The record, then, shows sentencing counsel raised the objections and arguments that Mesquias now claims they failed to do. If Mesquias is claiming sentencing counsel failed to raise additional objections or arguments, or that he was prejudiced by their alleged failure, Mesquias has not met his burden. His allegations are conclusory, and therefore his claim should be denied. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam) ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.").

**H. Counsel failed to raise stronger issues on appeal.**

In his eighth and final claim, Mesquias argues his appellate counsel[6] failed to raise stronger issues on appeal. Dkt. No. 2 at 45-46. Mesquias contends "there were a plethora of issues which could have been raised on appeal" that "he was not able to bring" because counsel failed to communicate with him. *Id.* Again, Mesquias's claims are belied by the record; his appellate counsel made a variety of arguments on appeal to the Fifth Circuit. *See Mesquias*, 29 F.4th at 279. Appellate counsel's arguments centered around challenges to the sufficiency of the evidence to support Mesquias's conviction for health care fraud and conspiracy to commit that fraud. *Id.* If Mesquias is claiming additional arguments exist to refute the validity of his conviction, he has not identified what arguments appellate counsel should have raised. *See Ellis v. Lynagh*, 873 F.2d 830, 840 (5th Cir. 1989) (The Constitution does not require appellate counsel to raise every nonfrivolous ground that must be pressed on appeal.). Mesquias also fails to allege how his appellate counsel's failure to communicate prejudiced the outcome of his appeal. Accordingly, his allegations are conclusory, and this claim should be dismissed.

## V.    Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a "showing that reasonable jurists could debate whether (or, for that matter,

---

[6] As mentioned above, Mesquias's ineffective assistance claims on appeal are directed toward Banker, Tony Canales, and Hector Canales. Dkt. Nos. 2 at 45-46. Banker did not represent Mesquias on appeal. Instead, the record evidence shows Mesquias was represented by Hector Canales, Tony Canales, and Robert Guerra, Jr. on appeal. *Mesquias*, No. 20-40869, ECF No. 146. However, Mesquias has not levied any ineffective assistance claims against Guerra. *See* Dkt. Nos. 1, 2, 23, 24.

agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 473 (2000) (internal quotations and citations omitted). Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). A certificate of appealability should not issue in this case because Mesquias has not made a substantial showing of the denial of a constitutional right.

## VI.    Recommendation

For these reasons, it is recommended that the Court: (1) **DENY** the claims presented in Mesquias's Motion; (2) **DIRECT** the Clerk of Court to close this case; and (3) **DECLINE** to issue a certificate of appealability.

## VII.    Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SIGNED** on this **8th** day of **August. 2024**, at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**

17/17